UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN EDWARD MOONEY, | Case No. 1:21-cv-00377-NODJ-HBK (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS TO DISMISS CASE FOR FAILURE TO STATE A CLAIM[1] |
| v. | |
| MACIAS-CARILLO, et al., | (Doc. No. 12) |
| Defendants. | 14-DAY DEADLINE |

Pending before the Court for screening under 28 U.S.C. § 1915A is Plaintiff's first amended complaint. (Doc. No. 12, "FAC"). For the reasons set forth below, the undersigned recommends that the district court dismiss the FAC because it fails to state any cognizable constitutional claim.

**SCREENING REQUIREMENT**

A plaintiff who commences an action while in prison is subject to the Prison Litigation Reform Act ("PLRA"), which requires, *inter alia*, the court to screen a complaint that seeks relief against a governmental entity, its officers, or its employees before directing service upon any defendant. 28 U.S.C. § 1915A. This requires the court to identify any cognizable claims and dismiss the complaint, or any portion, if is frivolous or malicious, if it fails to state a claim upon

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

1   which relief may be granted, or if it seeks monetary relief from a defendant who is immune from
2   such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2).

3       At the screening stage, the court accepts the factual allegations in the complaint as true,
4   construes the complaint liberally, and resolves all doubts in the plaintiff's favor. *Jenkins v.*
5   *McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir.
6   2003). A court does not have to accept as true conclusory allegations, unreasonable inferences, or
7   unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.
8   1981). Critical to evaluating a constitutional claim is whether it has an arguable legal and factual
9   basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).

10      The Federal Rules of Civil Procedure require only that a complaint include "a short and
11  plain statement of the claim showing the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).
12  Nonetheless, a claim must be facially plausible to survive screening. This requires sufficient
13  factual detail to allow the court to reasonably infer that each named defendant is liable for the
14  misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*,
15  572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not
16  sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.
17  *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969. Although detailed factual allegations are not
18  required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory
19  statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required
20  to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir.
21  2009) (internal quotation marks and citation omitted).

22      If an otherwise deficient pleading can be remedied by alleging other facts, a *pro se* litigant
23  is entitled to an opportunity to amend their complaint before dismissal of the action. *See Lopez v.*
24  *Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d
25  245, 248 (9th Cir. 1995). However, it is not the role of the court to advise a *pro se* litigant on
26  how to cure the defects. Such advice "would undermine district judges' role as impartial
27  decisionmakers." *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131
28  n.13. Furthermore, the court in its discretion may deny leave to amend due to "undue delay, bad

1 faith or dilatory motive of the part of the movant, [or] repeated failure to cure deficiencies by
2 amendments previously allowed . . ..." *Carvalho v. Equifax Info. Srvs., LLC*, 629 F.3d 876, 892
3 (9th Cir. 2010).

## BACKGROUND AND SUMMARY OF OPERATIVE COMPLAINT

Plaintiff, a state prisoner proceeding pro se, initiated this action by filing a civil rights complaint under 42 U.S.C. § 1983. (Doc. No. 1). The Court screened Plaintiff's initial Complaint and found that it failed to state any cognizable constitutional claim. (Doc. No. 9). After being granted an extension of time, Plaintiff timely filed a First Amended Complaint. (Doc. Nos. 11, 12).

The events giving rise to the FAC took place at Avenal State Prison ("ASP"). (*See generally* Doc. No. 12). The FAC names as Defendants the following ASP prison officials: (1) Warden Martin Gamboa, (2) Chief Medical Executive Officer J. Nash, (3) Chief Medical Officer Dr. Coonanan, (4) Physician Assistant Barry Green, (5) Registered Nurse Macias-Carillo. (*Id*. at 2-3). The FAC also names as a Defendant California Correctional Health Care Services ("CCHCS"). (*Id*. at 6).

On April 22, 2020, Plaintiff had a medical appointment with Defendant Macias-Carillo for pain in his left kidney/flank. (*Id*. at 2). Plaintiff advised Defendant Macias-Carillo of his history of urinary tract infections ("UTIs"). (*Id*.). Defendant Macias-Carillo administered a "urin [sic] dipstick test" and issued Plaintiff a bottle of Tylenol. (*Id*.). The FAC does not state what the results were of the urine dipstick test. Macias-Carillo then ordered a follow-up appointment with Defendant Green for the next day. (*Id*.). At Plaintiff's appointment the next day, Defendant Green examined Plaintiff, discussed his symptoms, reviewed the lab report results with Defendant Macias-Carillo, and advised Plaintiff that per the lab report Plaintiff did not have a UTI. (*Id*. at 6, 8). Green stated, in reference to an unspecified test, "those test [sic] can be wrong I'm going with the lab report." (*Id*. at 8). Green told Plaintiff his symptoms were likely due to dehydration and encouraged him to drink more water, up to 2 gallons per day. (*Id.* at 6, 8). Liberally construed, the FAC alleges claims for deliberate medical indifference against Defendants Macias-Carillo and Green for failure to diagnose him with a UTI or conduct further tests. (*Id*. at 8-9).

3

On an unspecified date, Plaintiff filed a health care grievance requesting (1) another urine dipstick test to confirm the presence of a UTI, (2) to be given antibiotics for his infection, (3) to be given sufficient pain medication that he would no longer be in pain, and (4) for his complaint to be heard by Green's supervisors. (*Id*.). The institutional level response did not order any intervention, and the response was upheld at the headquarters level. (*Id*.).

The FAC contends that Defendants Gamboa and Nash failed to interview prison staff concerning Plaintiff's allegations, which would have confirmed his claims and ensured he received the necessary medical attention. (*Id*. at 3-5). The FAC also asserts that Defendant Coonanan, Defendant Green's supervisor, "made no effort" to conduct interviews and investigate Plaintiff's claims, which was "a contributing factor sharing responsibility of violating Plaintiff's right to medical care and the progression of plaintiff's internal bodily pain and suffering and emotional distress." (*Id*. at 7).

The FAC asserts that Plaintiff "suffered injurys [sic] of internal bodily suffering and pain from a UTI and emotional distress due to health care employees inadequacy to treat for a period of 76 days till the Plaintiff finally received the medical care he was pleading for." (*Id*. at 10). The FAC alleges that CCHCS is liable for the failure of its employees to provide Plaintiff with adequate medical care, in violation of the Eighth Amendment. (*Id*.).

As relief, Plaintiff seeks monetary damages from the individual Defendants and CCHCS. (*Id*. at 10-11).

**APPLICABLE LAW AND ANALYSIS**

**A.  Eleventh Amendment Immunity**

The Eleventh Amendment to the U.S. Constitution bars suits for monetary damages against states and state agencies in district courts. *See P.R. Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc*., 506 U.S. 139, 144 (1993) ("Absent waiver, neither a State nor agencies under its control may 'be subject to suit in federal court.'") (citation omitted); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.") (citation omitted); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that

neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009) (CDCR is a state agency entitled to Eleventh Amendment immunity); *see also Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999) ("The State of California has not waived its Eleventh Amendment immunity with respect to claim brought under § 1983 in federal court . . . .").

As an agency of the State of California, CCHCS is entitled to Eleventh Amendment immunity. *See Gomes v. Mathis*, 2018 WL 2085237, at *3 (C.D. Cal. May 3, 2018) (finding CCHCS immune from suit under the Eleventh Amendment); *Valdez v. Warden of PVSP*, 2017 WL 3705306, at *3 (E.D. Cal. Aug. 28, 2017) ("Because CCHCS is a state agency, it is entitled to Eleventh Amendment immunity from suit."). The FAC thus fails to state a viable § 1983 claim against CCHCS.

### B. Supervisory Liability

Liability under section 1983 arises only upon a showing of personal participation by the defendant. "There is no respondeat superior liability under section 1983." *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989) (citations omitted). A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations or knew of the violations and failed to act to prevent them. *Id.*, *see also Starr v. Baca,* 652 F.3d 1202, 1206–07 (9th Cir. 2011).

Liberally construed, the FAC asserts Eighth Amendment claims against Defendants Gamboa, Nash, and Coonanan based on their failure to address what Plaintiff perceives was errors by the employees they supervise. As to Defendants Gamboa and Nash, the FAC does not allege that they knew of Defendants Macias-Carillo and Green's action, except through their involvement in the health care grievance process. As discussed further below, review of a health care grievance is not a basis for liability regarding the underlying constitutional violations. Thus, the FAC fails to allege sufficient involvement or knowledge by Defendants Gamboa and Nash for them to be liable under section 1983.

As to Defendant Coonanan, the mere fact that he supervises Defendants Macias-Carillo and Green does not give rise to liability because, as noted above, there is no respondeat superior

liability under section 1983. *Taylor*, 880 F.2d at 1045. Because the FAC fails to establish that Defendants Gamboa, Nash, and Coonanan either participated in, directed, or knew of the alleged violations by Defendants Macias-Carillo and Green and nevertheless failed to remedy them, the FAC fails to state a claim against these three Defendants.

### C. Grievance Process

The FAC, like the initial Complaint, alleges Eighth Amendment deliberate medical indifference claims against Defendants Nash and Gates based on their involvement in the administrative grievance process. (*See* Doc. No. 12 at 3-4, 7). In a § 1983 action, the plaintiff must demonstrate that the defendant's conduct was the cause of the claimed injury. *Arnold v. IBM Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). Further, a prisoner has no constitutional right to an effective grievance or appeal procedure. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that prisoner has no constitutional right to effective grievance or appeal procedure); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

Consequently, as a rule, a prison official's participation in the grievance process does not constitute significant participation in an alleged constitutional violation sufficient to give rise to personal liability under § 1983. *See, e.g.*, *Peralta v. Dillard*, 744 F.3d 1076, 1086–88 (9th Cir. 2014) (en banc) (finding that doctors who reviewed an inmate's grievance at the institutional level of administrative review did not thereby demonstrate that they had actual knowledge of facts demonstrating that the inmate was exposed to a substantial risk of serious harm); *Shallowhorn v. Molina*, 572 F. App'x 545, 547 (9th Cir. 2014) (finding district court properly dismissed § 1983 claims against defendants who "were only involved in the appeals process"); *Wilson v. Woodford*, 2009 WL 839921, at *6 (E.D. Cal. Mar. 30, 2009) (finding the denial of an administrative grievance without more does not cause or contribute to constitutional violation); *Penton v. Johnson*, 2019 WL 6618051, at *6 (E.D. Cal. Dec. 5, 2019) ("[A]prison official's denial of a grievance does not itself violate the constitution . . . . [and] '[a]n allegation that a prison official inappropriately denied or failed to adequately respond to a grievance, without more, does not state a claim under § 1983.'") (quoting *Evans v. Skolnik*, 657 F. App'x 285, 288

(9th Cir. 2015)). Thus, Defendants Nash and Gates' respective roles in Plaintiff's administrative grievance process is not a legitimate bases for liability under § 1983. Thus, the FAC fails to state a claim against Defendants Nash and Gates.

### D. Deliberate Medical Indifference

Deliberate indifference to the serious medical needs of an incarcerated person constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976). To maintain an Eighth Amendment claim premised on prison medical treatment, the prisoner must show that officials were deliberately indifferent to his medical needs. A finding of "deliberate indifference" involves an examination of two elements: the seriousness of the plaintiff's medical need (determined objectively) and the nature of the defendant's response (determined by defendant's subjective state of mind). *See McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir.1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller,* 104 F.3d 1133, 1136 (9th Cir.1997) (en banc). On the objective prong, a "serious" medical need exists if the failure to treat "could result in further significant injury" or the "unnecessary and wanton infliction of pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). On the subjective prong, a prison official must know of and disregard a serious risk of harm. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Such indifference may appear when a prison official intentionally denies or delays care, or intentionally interferes with treatment once prescribed. *Estelle,* 429 U.S. at 104-05.

If, however, the official failed to recognize a risk to the plaintiff—that is, the official "*should* have been aware" of a risk, but in fact was not—the official has not violated the Eighth Amendment. *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 668 (9th Cir. 2021) (emphasis in original). That is because deliberate indifference is a higher standard than medical malpractice. Thus, a difference of opinion between medical professionals—or between the plaintiff and defendant—generally does not amount to deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). An argument that more should have been done to diagnose or treat a condition generally reflects such differences of opinion and not deliberate indifference. *Estelle*, 429 U.S. at 107. To prevail on a claim involving choices between alternative courses of

1  treatment, a plaintiff must show that the chosen course "was medically unacceptable under the
2  circumstances," and was chosen "in conscious disregard of an excessive risk" to the plaintiff's
3  health. *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016).

4  Neither will an "inadvertent failure to provide medical care" sustain a claim, *Estelle*, 429
5  U.S. at 105, or even gross negligence, *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d
6  1062, 1082 (9th Cir. 2013). Misdiagnosis alone is not a basis for a claim of deliberate medical
7  indifference. *Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012). A delay in treatment,
8  without more, is likewise insufficient to state a claim. *Shapley v. Nevada Bd. of State Prison*
9  *Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). It is only when an official both <u>recognizes</u> and
10 <u>disregards</u> a risk of substantial harm that a claim for deliberate indifference exists. *Peralta v.*
11 *Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc). A plaintiff must also demonstrate harm
12 from the official's conduct. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). And the
13 defendant's actions must have been both an actual and proximate cause of this harm. *Lemire*, 726
14 F.3d at 1074.

15 For purposes of this Order, the Court will deem the pain and discomfort Plaintiff
16 experienced in his left side on or about April 22, 2020 a serious medical need. The Court then
17 considers whether the FAC sufficiently alleges that any of the named defendants were
18 deliberately indifferent to Plaintiff's serious medical condition.

19 As to Defendant Macias-Carrillo, the FAC alleges that on April 22, 2020 he met with
20 Plaintiff, learned of Plaintiff's history of UTIs, and administered a urine dipstick test to Plaintiff.
21 (Doc. No. 12 at 2, 9). The FAC does not allege what the test results showed. (*Id*.). Defendant
22 Macias-Carillo then "issued a bottle of Tylinol [sic]" and referred Plaintiff for a follow-up the
23 next day with Defendant Green. (*Id*.).

24 On April 23, 2020, Defendant Green examined Plaintiff, asked about his symptoms,
25 reviewed the lab report prepared by Defendant Macias-Carillo, and discussed the lab report with
26 Macias-Carillo. (*Id*. at 8). The FAC refers to a comment by Defendant Green in which he
27 appears to disregard the results of another unspecified test, stating "those test [sic] can be wrong
28 I'm going with the lab report." (*Id*.). Because the lab report showed no sign of infection,

Defendant Green concluded that Plaintiff did not have an infection and determined the cause of Plaintiff's pain was likely dehydration. (*Id.*).

The FAC later alleges that "Plaintiff suffered injurys of internal bodily suffering and pain from a UTI and emotional distress due to health care employee's inadequacy to treat for a period of 76 days till the Plaintiff finally received the medical care he was pleading for." (*Id*. at 10). The FAC does not state when the 76-day period of Plaintiff suffering from pain and distress started or ended, nor does it allege who was responsible for the failure to treat him. Liberally construed, however, the FAC alleges that Defendants Green and Macias-Carillo failed to diagnose Plaintiff with a UTI on or about April 22-23, 2020, and that as a result he suffered an undiagnosed UTI for more than two months.

The Court cannot infer form the facts alleged that either Defendant was deliberately indifferent to Plaintiff's serious medical needs. In response to Plaintiff's concerns, Defendant Macias-Carillo administered a test for a urinary tract infection, provided him pain medication, and scheduled him for a follow up appointment with another provider the next day. (*Id*. at 2, 9). These actions do not reflect deliberate indifference, but rather show that Defendant Macias-Carillo was taking reasonable steps to treat Plaintiff.

Similarly, at Plaintiff's appointment on April 23, 2020, Defendant Green examined Plaintiff, discussed his symptoms, reviewed the lab report, and discussed the prior examination with Defendant Green. (*Id*. at 6, 8). He ultimately concluded, after considering the information before him, that Plaintiff was not suffering from a UTI. (*Id*.). While Plaintiff believes that conclusion was erroneous, "a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a [Section] 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir.1981). To prevail, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.1986). A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. *Sanchez v. Veld*, 891 F.2d 240, 242 (9th Cir. 1989).

Here, the FAC does not set forth facts indicating that Defendants Macias-Carillo and Green's diagnosis and treatment were "medically unacceptable under the circumstances." Given that Plaintiff's lab report showed no infection, Green's decision not to treat Plaintiff for a UTI was not made "in conscious disregard of an excessive risk" to Plaintiff's health." *Jackson*, 90 F.3d at 332. Nor is there any evidence that Defendant Macias-Carillo was deliberately indifferent to Plaintiff's medical condition, given that he conducted an appropriate test and referred Plaintiff for a follow-up the next day. Even if Defendant Green and Macias-Carillo misdiagnosed Plaintiff's UTI as mild dehydration, misdiagnosis constitutes medical negligence at most, but it does not violate the Eight Amendment. *Farmer*, 511 U.S. at 835. As a result, the FAC fails to state a cognizable Eighth Amendment deliberate indifference claim against Defendants Green and Macias-Carillo.

## FINDINGS AND RECOMMENDATION

Plaintiff here had an opportunity to cure the deficiencies in his initial complaint. (*See* Doc. No. 1, 9). In its prior screening order the Court instructed Plaintiff in detail on the applicable law and pleading requirements. (*See* Doc No. 9). Despite affording Plaintiff an opportunity to correct the deficiencies in his original Complaint, the FAC again fails to adequately state any plausible § 1983 claim and largely repeats the same claims alleged in the initial Complaint. (*See* Doc Nos. 1, 12). The undersigned thus finds that any further leave to amend would be futile and recommends the district court dismiss the FAC without further leave to amend. *McKinney v. Baca*, 250 F. App'x 781 (9th Cir. 2007) *citing Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir. 1992) (noting discretion to deny leave to amend is particularly broad where court has afforded plaintiff one or more opportunities to amend his complaint); *see also Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (A district court can deny leave "where the amendment would be futile . . . or where the amended complaint would be subject to dismissal").

Accordingly, it is **RECOMMENDED**:

Plaintiff's first amended complaint be dismissed under § 1915A for failure to state a claim and the action be dismissed.

NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these findings and recommendations, a party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:   January 18, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE